868 P.2d 964

**STATE of Arizona, Appellee/Respondent,**

v.

**John James ANDERSEN, Jr.,
Appellant/Petitioner.**

**Nos. 1 CA–CR 90–1794, 1 CA–CR 91–1404–PR and 1 CA–CR 92–0148–PR.**

Court of Appeals of Arizona,
Division 1, Department A.

July 20, 1993.

Reconsideration Denied Sept. 2, 1993.

Review Denied March 16, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel Crim. Appeals Section, Dawn M. Northup and Kent Cattani, Asst. Attys. Gen., Phoenix, for appellee.

Charles R. Hastings, Yavapai County Atty. by Thomas B. Lindberg, Deputy County Atty., Prescott, for respondent.

Charles G. Tatham, P.C. by Charles G. Tatham, Phoenix, for appellant/petitioner.

John James Andersen, Jr., in pro. per.

## OPINION

**EHRLICH, Presiding Judge.**

John James Andersen, Jr. ("defendant") appeals and twice petitions for review from his conviction and sentence for negligent homicide. For the following reasons, we affirm the judgment, grant review of the petitions and grant relief in part.

### FACTUAL BACKGROUND

Jeffrey Fry worked for the defendant at the defendant's ranch. During the evening of February 6, 1990, the defendant and Fry quarreled and Fry left for a Wickenburg bar. Among Fry's companions at the bar were Lisa Gallagher and Donny Chapman, another person employed on defendant's ranch. After midnight, Fry drove Chapman to the ranch. There, Fry exchanged the brown truck he had been driving for a white truck and returned to Wickenburg, where he picked up Gallagher, attached her horse trailer to the white truck and told her that he wanted to "get his horse." Fry and Gallagher proceeded to the ranch. When they arrived, they saw the defendant standing near the vehicles parked by the ranch house. The defendant asked Fry what he was doing and Fry answered that he had come to pick up his horse. The defendant responded that the horse did not belong to Fry. When Fry went to the corral, the defendant pulled the keys from the ignition of the white truck and removed a rifle from the passenger compartment of the brown truck. The defendant proceeded to go inside the ranch house, whereupon Fry pulled the telephone wires out of the wall on the side of the house. The defendant came out of the house with the rifle and, according to Gallagher, pointed it at Fry's head. Gallagher heard a single shot and then saw Fry lying on the ground near the horse trailer. Gallagher testified that when she attempted to approach Fry, the defendant pointed the rifle at her. The police were summoned and arrested the defendant. Fry died later from the gunshot wound to his head.

The defendant was indicted for the first-degree murder of Fry and aggravated assault of Gallagher. At trial, he maintained that the shooting was accidental. He testified that Fry did not have permission to take the horse and that, while they were arguing, Fry pushed him against the side of the horse trailer and, as he fell, the rifle hit the trailer and discharged. The defendant denied having pointed the weapon at either Fry or Gallagher. He did admit to having consumed at least seven drinks of whiskey or beer during the six hours prior to the shooting. A sheriff's deputy who responded to the shooting testified that the defendant was intoxicated.

The trial court instructed the jury on first- and second-degree murder, manslaughter and negligent homicide. The jury was also instructed on justification for defense of property. However, the court determined, and defense counsel conceded, that the evidence did not support an instruction on self-defense. The jury found the defendant guilty of negligent homicide of Fry and not guilty of aggravated assault on Gallagher.

At sentencing, the trial court found that the negligent homicide conviction was a dangerous offense under Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–604 and sentenced the defendant to an enhanced, aggravated term of eight years imprisonment, with 32 days of presentence incarceration credit. Prior to imposing sentence, the court listed the following aggravating factors: the use of a gun, Fry's death, the emotional and economic harm to Fry's family, and the potential danger to Gallagher from the gun. In addition, the court ordered the defendant to pay restitution of $11,822.91 and a $100 felony assessment.

The defendant timely appealed. While his appeal was pending, he filed two petitions for post-conviction relief, both of which were denied by the trial court without evidentiary hearings. After his motions for rehearing on the petitions also were denied, the defendant filed petitions for review in this court, which were consolidated with the defendant's appeal.

### DISCUSSION

#### A. Direct Appeal

The defendant raises three issues on appeal:

1. Whether he was improperly sentenced because the dangerous nature of the felony was not determined by the jury as required by A.R.S. § 13–604(K);

2. whether the trial court considered an improper factor in imposing an aggravated sentence, and

3. whether his trial counsel was ineffective.

### 1. Dangerous Nature of Felony

■■■ The defendant contends that he was improperly sentenced as a dangerous offender because the dangerous nature of the felony was not determined by the jury as required by A.R.S. § 13–604(K). Because the defendant failed to object to the enhancement of his sentence, we will review the application of the statute for fundamental error only. *E.g., State v. Atwood,* 171 Ariz. 576, 629, 832 P.2d 593, 646 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

Dangerousness, i.e., the use or exhibition of a deadly weapon or dangerous instrument, is not necessarily an element of negligent homicide. *State v. Parker,* 128 Ariz. 97, 99, 624 P.2d 294, 296 (1981). In this case, imposition of the enhanced sentence was valid if the dangerous nature of the felony was charged and "admitted or found by the trier of fact." A.R.S. § 13–604(K). The defendant's testimony can supply the requisite admission. *State v. Hudson,* 152 Ariz. 121, 126, 730 P.2d 830, 835 (1986) ("compliance with A.R.S. § 13–604(K) because the defendant admitted at trial to using and exhibiting a dangerous weapon"); *State v. Moya,* 140 Ariz. 508, 510, 683 P.2d 307, 309 (App.1984) (defendant properly convicted of dangerous offense because admitted using deadly weapon in commission of offense). "Use" and "exhibition" are undefined under the criminal code and, in the context of this statute, have

not been the subject of prior judicial construction. The focus in this case is upon "exhibition" of the rifle.

In *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Cr.App.1989), the court construed a sentence-enhancement statute virtually identical to that of Arizona [1] and stated that " '[e]xhibit' only requires that a deadly weapon be consciously shown, displayed, or presented to be viewed." *Id.* According to *Webster's New Universal Unabridged Dictionary* (2d ed. 1983), the term "exhibit" means "to present to public view; show; display." *Accord Random House Dictionary of the English Language* (2d ed. unabridged 1987); *Oxford English Dictionary* (1933).

Considering these definitions, we find that the defendant admitted the exhibition of the rifle. He testified that he held the rifle, that it was in his hand when he was within two feet of Fry. While he denied pointing the rifle at Fry or Gallagher and said that he had no intention of doing anything with it, the defendant acknowledged that he and Fry were "hassling over a gun and it went off." These statements adequately established an exhibition of the rifle. Thus, submitting the allegation of dangerousness to the jury was unnecessary and the enhanced sentence was properly imposed based on the defendant's own testimony.

### 2. Aggravating Factor

■■■ The defendant argues that the trial court erred when it found as an aggravating factor that he caused "potential danger" to Gallagher by "waving a loaded firearm drunkenly." [2] According to the defendant, his sentence was improperly increased because the court considered conduct that was the subject of an acquittal. As the defendant failed to object to the consideration of this aggravating factor, we will review this issue

---

**1.** Art. 42.12, § 3g(a)(2), V.A.C.C.P. provides:

(a) The provisions of Sections 3 and 3c of this Article do not apply:

\* \* \* \* \* \*

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. . . .

**2.** The defendant initially argued that the trial court also erred by considering Fry's death as an aggravating factor. However, subsequent to the supreme court decision in *State v. Lara,* 171 Ariz. 282, 285, 830 P.2d 803, 806 (1992), the defendant properly withdrew this argument.

for fundamental error only. *E.g., Atwood,* 171 Ariz. at 629, 832 P.2d at 646.

■ Conduct which resulted in a criminal charge of which a defendant is acquitted may be considered to aggravate his sentence. *State v. Kelly,* 122 Ariz. 495, 498–99, 595 P.2d 1040, 1043–44 (App.1979). Additionally, the jury in this case, because it was instructed as to only the defendant's intentional conduct in threatening Gallagher, did not determine whether the defendant was reckless or negligent. The trial court's finding that the defendant endangered Gallagher was amply supported by the record and reflected an appropriate concern for the potential risk the defendant posed to another person. *See State v. McCuin,* 167 Ariz. 447, 450, 808 P.2d 332, 335 (App.1991), vacated in part on other grounds, 171 Ariz. 171, 829 P.2d 1217 (1992) ("The need to protect potential victims also is an appropriate factor to consider in deciding the length of sentence to impose."); *State v. Williams,* 134 Ariz. 411, 414, 656 P.2d 1272, 1275 (App.1982) (protecting society from defendant's gross disregard for legal system is proper aggravating factor).

### 3. Ineffective Assistance of Counsel

■ We do not address the claims of ineffective assistance of trial counsel raised only in the defendant's appeal. Such claims must be presented to the trial court in a petition for post-conviction relief. *E.g., Atwood,* 171 Ariz. at 599, 832 P.2d at 618; *State v. Valdez,* 160 Ariz. 9, 15, 770 P.2d 313, 319 (1989). The other allegations regarding counsel will be addressed in the context of the first petition for post-conviction relief.

### B. Petitions For Post–Conviction Relief

### 1. First Petition

■ Only those claims raised in the petition for post-conviction relief and preserved

in the motion for rehearing are subject to appellate review. *E.g., State v. Bortz,* 169 Ariz. 575, 578, 821 P.2d 236, 239 (App.1991).[3] Summary dismissal is proper if the trial court determines that no "material issue of fact or law exists which would entitle petitioner to relief." Ariz.R.Crim.P. 32.6(c). In order to receive an evidentiary hearing, a petitioner must present a "colorable claim"— one which, if true, would have changed the outcome at trial. *E.g., State v. Watton,* 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990). We will reverse a summary disposition only if an abuse of discretion affirmatively appears. *E.g., id.* at 325, 793 P.2d at 82.

In this case, the defendant preserved as issues[4] his assertions that his sentence was improperly enhanced pursuant to A.R.S. § 13–604, that Fry's death was improperly considered as an aggravating factor, that he was denied the effective assistance of counsel, that newly-discovered evidence exists and that the restitution obligation was extinguished by a civil settlement. We previously discussed the first two issues and now will address the remaining three.

### a. Ineffective Assistance of Counsel

■ According to the defendant, his counsel was ineffective by failing to call Chapman as a witness at trial, by not requesting a self-defense verdict form and by failing to adequately prepare for sentencing. A claim for relief based upon ineffective assistance of counsel is analyzed by a bipartite standard, deficient performance and actual prejudice. *E.g., Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Atwood,* 171 Ariz. at 600, 832 P.2d at 617. The burden of proof is on the petitioner

---

**3.** We accordingly will not consider the allegation that counsel should have sought an instruction on "accident" because it was not preserved in the motion for rehearing. We also will not consider the assertion that counsel was ineffective due to allegedly unethical conduct during the jury instructions because it was not raised in the petition for post-conviction relief but only in the motion for rehearing.

**4.** Defense counsel filed a motion for rehearing preserving three issues. Counsel also filed a

motion to allow the defendant to file a supplemental motion for rehearing. The defendant subsequently filed a "motion for reconsideration" which, in addition to the issues raised in counsel's motion for rehearing, preserved two other issues. Although the trial court noted that the defendant did not have a right to hybrid representation, *State v. Rickman,* 148 Ariz. 499, 504, 715 P.2d 752, 757 (1986), it nevertheless ruled on the defendant's own motion. As a result, we will consider the issues.

to show ineffective assistance of counsel by a preponderance of the evidence. *E.g., State v. Gerlaugh,* 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985). A trial court need not address both aspects of the standard if a petitioner makes an insufficient showing as to one. *E.g., Atwood,* 171 Ariz. at 600, 832 P.2d at 617.

■ The defendant claims that counsel rendered ineffective assistance by failing to call Chapman as a trial witness. According to the defendant, an affidavit from Chapman dated June 18, 1991, supports the conclusion that he was vital to the defense and thus it was error to not include him as a defense witness.[5] We disagree.

Chapman's affidavit includes the avowal "[t]hat from my vantage point of the incident ... Mrs. Gallagher could not even see Mr. Andersen, or Mr. Fry, let alone what transpired between them." However, this statement is not germane to a determination of ineffective assistance because the jury acquitted the defendant of the first- and second-degree murder charges supported by Gallagher's testimony and convicted the defendant of negligent homicide. The defendant was not prejudiced by counsel's failure to present Chapman's testimony impeaching Gallagher.

■ Chapman in his affidavit also indicated his awareness that Fry possessed a handgun and that another handgun was in the cab of the white truck. According to the defendant, this testimony would have supported a defense that his use of deadly force was justified. He asserts that counsel was ineffective by failing to present this evidence and by not requesting a self-defense instruction.[6]

■ To be entitled to a justification instruction, a defendant must establish the "slightest evidence" that his actions were justified, i.e., "evidence which tends to prove

a hostile demonstration which might be reasonably regarded as placing the accused in imminent danger of losing his life or sustaining great bodily harm." *State v. Buggs,* 167 Ariz. 333, 335, 806 P.2d 1381, 1383 (App.1990) (citations omitted). Under A.R.S. §§ 13–404 and 13–405, a person is justified in using deadly physical force in self-defense when a reasonable person would believe that it is immediately necessary to protect himself against the other's use or attempted use of deadly force. Even if Chapman's testimony had been admitted, the defendant has not provided the slightest evidence supporting a self-defense instruction. Although the police found a pistol and a rifle in the white truck, the defendant testified that he did not know or suspect that Fry was armed. Moreover, while the defendant testified that he wanted to stop Fry from removing the horse from his property, he admitted that he "probably" could have done so without displaying a rifle. Given that there was no evidence that Fry was attempting to use deadly force against the defendant, a self-defense instruction was not available to him. *See State v. Dumaine,* 162 Ariz. 392, 404–05, 783 P.2d 1184, 1196–97 (1989). Counsel's performance was not deficient because Chapman was not a material witness.

■ The defendant similarly was not prejudiced regarding counsel's failure to request a mitigation hearing and correct errors in the presentence report. Prior to sentencing, counsel submitted a memorandum to the court which addressed the mitigating circumstances, corrected some alleged presentence report inaccuracies and attached numerous letters on behalf of the defendant from friends, relatives and attorneys. Counsel orally reinforced these arguments at the sentencing hearing; the defendant declined to elaborate upon his attorney's comments. In denying the defendant post-conviction relief on this issue, the court stated that it had considered not only the sentencing memoran-

---

5. The defendant has also included, as an appendix to his supplemental brief, a second affidavit executed by Chapman. Because that affidavit was not submitted to the trial court and is not part of the appellate record, we will not consider it.

6. Although the defendant insisted in his petition for post-conviction relief that counsel was ineffective for failing to request a variety of justification instructions, only the lack of a self-defense instruction was addressed in his motion for rehearing. *See Bortz,* 169 Ariz. at 578, 821 P.2d at 239.

dum but also the trial testimony of the defendant's character and counsel's allocution. The defendant suggests nothing more that would have been accomplished by a formal mitigation hearing.

### b. Newly–Discovered Evidence

██ The defendant also asserts that Chapman's affidavit constituted newly-discovered evidence. There are five requirements to establish a colorable claim of fresh evidence, one of which is that "the evidence must appear on its face to have existed at the time of trial but be discovered after trial." *State v. Bilke,* 162 Ariz. 51, 52–53, 781 P.2d 28, 29–30 (1989). Chapman's affidavit does not meet that requirement; the parties knew that Chapman was at the defendant's house at the time of the shooting and counsel interviewed him shortly afterward, before trial. As a result, the petition failed to set out a colorable claim.

### c. Payment of Restitution

While his first petition for post-conviction relief was pending, the defendant moved the trial court to declare his restitution obligation to the victim's parents paid. The defendant asserted that he had entered a settlement with Fry's father, drawn in accord with *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969), in which he had agreed to the entry of a judgment of $200,000 against him in a wrongful death action and Fry's father agreed not to execute on that judgment against the defendant's personal assets. Whether the defendant's liability insurance covered the shooting was the subject of a declaratory judgment action, but the parties stipulated "[t]hat upon execution of this agreement, all restitution ordered by the court in the criminal action ... is declared paid and satisfied."

The trial court treated the defendant's motion as an amendment to the petition for post-conviction relief. We do not find this issue within the purview of Ariz.R.Crim.P. 32. Neither is it appealable. *See State v. Hovey,* 175 Ariz. 219, 854 P.2d 1205 (App.

1993). In our discretion, we treat the matter as one appropriate for special action jurisdiction. *Id.*

██ The trial court erred in summarily rejecting this claim. Settlement of a civil lawsuit may extinguish a defendant's restitution obligation to the extent that the settlement compensates the victim's family's economic loss. A.R.S. § 13–603(C); *State v. Iniguez,* 169 Ariz. 533, 537, 821 P.2d 194, 198 (App.1991). Because the petition adequately alleged a settlement,[7] we remand this matter for the court to determine the existence of the *Damron* agreement and the degree of its conclusive effect. If the agreement extinguishes any right of restitution that the victim's family has against the defendant, the restitution order should be vacated. If the agreement is not as broad as has been alleged by the defendant, the court should determine to what degree the settlement compensates the family for its economic loss and give the defendant a corresponding offset against the ordered restitution.

### 2. Second Petition

The trial court also denied the defendant's second petition for post-conviction relief without an evidentiary hearing. In the motion for rehearing, the defendant claimed that the court erred in failing to instruct the jury on justification based upon self-defense and crime prevention. In addition, the defendant claimed that he was entitled to a retrospective application of *State v. Taylor,* 169 Ariz. 121, 122–24, 817 P.2d 488, 489–91 (1991), which held that, under appropriate circumstances, the crime prevention defense applied outside a defendant's home. The court found that the defendant's claims were precluded.

The court was correct in finding that the defendant's claim regarding justification instructions was precluded because he offered no explanation for failing to include the allegation in his first petition which raised issues regarding counsel's failure to present justification defenses. *See* Ariz.R.Crim.P. 32.-

---

7. Correspondence filed by the defendant indicated that a court awarded $80,000 in the wrongful death action and denied coverage in the declaratory judgment action brought by the defendant's insurer.

2(a)(3), (c). Although his claim regarding a subsequent change of law was not subject to preclusion, *see* Ariz.R.Crim.P. 32.2(b); *State v. Bonnell,* 171 Ariz. 435, 437, 831 P.2d 434, 436 (App.1992), summary dismissal was proper because the extension of the crime-prevention defense in *Taylor,* 169 Ariz. at 122–24, 817 P.2d at 489–91, was of no benefit to the defendant who, as has been discussed, was not entitled to assert it.

### CONCLUSION

We have reviewed the record on appeal and find no fundamental error. A.R.S. § 13–4035. The defendant's conviction and sentence are affirmed.

We grant review of the petitions but deny relief.

On the issue of the satisfaction of the defendant's restitution obligation, we accept special action jurisdiction, grant relief and remand this matter for further proceedings consistent with this opinion.

CONTRERAS and KLEINSCHMIDT, JJ., concur.